Dufresne and wife vs. Weise.

SLANDER: VARIANCE: EVIDENCE. *(1) General rule as to proof. (2) Case of immaterial variance. (3) When words actionable* per se. *(4) Evidence as to a party's character. (5) Rebuttal of impeaching testimony.*

BILL OF EXCEPTIONS: *(6) Imports absolute verity.*

REVERSAL OF JUDGMENT: *(7) For erroneous instructions.*

1. In actions for slander, it is sufficient if the *gravamen* of the charge, as laid, be proven.
2. Where, therefore, the complaint did not assume that the words charged were actionable *per se,* but imputed to them an actionable meaning by

Dufresne and wife vs. Weise.

colloquium and innuendo, and defendant's answer, while denying that he spoke the precise words charged, admitted that he spoke "other words of similar import," and justified by alleging that plaintiff did in fact commit the crime thus imputed to her, and the proof was that defendant used words of similar import to those charged, though not quite the exact words, the variance was immaterial.

3. Words falsely charging an act criminal by the law of the place of the act are slanderous *per se*, whether or not such act would have been criminal by the law of the place of the speaking.

4. Where the *character* of a party is properly in question, witnesses well acquainted with the party in the place of his residence may testify to his character, without having first been asked whether they know such character.

5. Where it is sought to impeach the testimony of a witness by proof of his statements elsewhere, his attention having been called to the time, place, etc., if he does not admit making the statements, they may be proven by other witnesses; and finally, the first witness may be allowed to reäffirm or explain his evidence; but it is not error to reject *further* evidence, by *other* witnesses, to sustain the testimony of such first witness as to the character of his statements on the occasion referred to.

6. The bill of exceptions, in due form, is a record importing absolute verity in this court, until duly amended; and a statement therein that the charge given to the jury was in writing, is conclusive of the fact.

7. A judgment will not be reversed for errors in the charge which could not have materially affected the result.

RYAN, C. J., dissents from the judgment.

APPEAL from the County Court of *Brown* County.

Action for slander of the female plaintiff. The complaint charges that defendant, on etc., contriving and maliciously designing to injure the female plaintiff in her good name and credit, and to bring her into public scandal, etc., etc., and to harrass and oppress her, did on said day, in the presence and hearing of one Horace White and others, maliciously speak of and concerning said plaintiff certain false and defamatory words [which are there set forth], meaning thereby that he, the said defendant, had had sexual connection with the said female plaintiff before her marriage to the other plaintiff, that he, said defendant, had paid her five dollars for having such connection with her, that he asked for a receipt for said

sum of five dollars so paid her by him for said purpose, and that he then and there had such receipt; and meaning thereby that said female plaintiff, prior to her marriage, had been guilty of open gross lewdness and lascivious behavior by having lewdly and lasciviously cohabited and associated with said defendant, and by having had carnal and illicit connection with him; and that by reason of said grievances said female plaintiff had been injured in her name and reputation, to her damage, etc. The complaint was afterwards amended so as to state that the female plaintiff was a single woman at the time of the alleged intercourse with her by defendant.

The answer denies that defendant spoke the words stated in the complaint, but admits that he spoke in the presence of Horace White, named in the complaint, "words of similar import;" it then denies that said words were false and defamatory, and avers that the facts so stated to Horace White were true, "and that he (defendant) did have sexual intercourse with the female plaintiff before her marriage; that he did pay her five dollars for that privilege, and did take her receipt therefor, which he then had and still has; and that he told said facts to said White with no intent to injure" the female plaintiff, "and without any malice whatever."

At the trial, plaintiffs introduced two witnesses who testified to having heard the defendant, at the time laid in the complaint, speak words in general similar to those there charged. One of these witnesses, however, testified: "I don't know the exact words used by *Weise* in speaking of *Mrs. Dufresne*. He said he had been having something to do with her; he showed me a paper that he had connection with her, or something of that kind — that he had cohabited with her. I don't remember the exact words." The other witness testified to the exact words used by defendant; and the word used to express the act of connection, as stated by this witness, was not the same alleged in the complaint. Defendant's motion for nonsuit on the ground of plaintiff's failure to prove the words alleged, was

denied.    Defendant then introduced evidence to prove the averments of the answer; and plaintiffs introduced rebutting testimony.

The court instructed the jury, among other things, that if they believed, from the evidence, " that defendant used the defamatory words alleged, or [words] substantially the same, and conveying to the hearers the same impression, as those recited in the complaint," that would be sufficient to sustain that averment of the complaint; that if there was a failure on defendant's part to prove the truth of such words in any essential particular, the justification failed, and the verdict must be for the plaintiff; and that the conclusions of the jury as to the truth of the facts alleged in justification " must be arrived at by a preponderance of evidence."    As to damages, the court charged that, in estimating their amount, the jury should consider all the facts and circumstances [tending] to show malice on defendant's part towards the female plaintiff, when he uttered these slanders, for the purpose of increasing the damages;  that if he repeated the words at different times, that fact was proper for the jury to consider as evidence of malice; that they might also take into account the injury suffered by said plaintiff in her reputation or feelings; "also the nature of the crime charged against her, on the principle that the greater the crime charged the greater the injury;" and that they might also " make an allowance for the sake of public example, and by way of protecting persons in general from slanders of a similar character;" that if defendant untruly made the charge stated in the complaint against the female plaintiff, he was "liable to her for damages as compensation for injury to her feelings, or mental suffering," and this, " even if the words were uttered without any bad motives or malicious intent;" and that if defendant slandered said plaintiff " willfully and maliciously, with intent to injure her feelings and disgrace her," the jury ought " to give her such

damages as in their opinion were sufficient to punish the defendant and be an example to others."

Instructions were asked by defendant to the effect that punitory or vindictive damages were to be allowed only in case it were shown that defendant "was actuated by express malice or a vindictive desire to injure the plaintiff;" and that plaintiff was entitled to recover nothing as compensation for the injury to her feelings resulting from the insult, indignity, public exposure and the like, unless the jury found "that defendant was moved by actual and express malice in the utterance of the words complained of." These instructions were refused.

Plaintiff had a verdict for $500. Defendant asked for a new trial, and upon the argument of the motion an affidavit of one of his attorneys was read and filed, stating in substance that the original paper from which the judge's charge to the jury appeared to be read, had never been filed; and that, as affiant believed, the charge as it appeared in the paper actually on file did not contain all the charge as originally given, and some parts of the charge as given were never reduced to writing. A motion for a new trial was denied; and, from a judgment pursuant to the verdict, defendant appealed.

For the appellant, there was a brief by *Tracy & Bailey*, and oral argument by *Mr. Tracy*.

For the respondents, there was a brief by *Hudd & Wigman*, and oral argument by *Mr. Hudd*.

ORTON, J. The complaint in this case does not assume that the obscene word charged to have been used in connection with the other words, is actionable *per se*, but imputes to it and the other words a criminal meaning by defining them by innuendo, and by alleging as to whom and under what circumstances they were spoken, by a colloquium. The answer, although denying the use of this identical word, as well as of the other words charged, admits the speaking of words of

similar import and of precisely the same meaning, and as imputing the same crime as defined and explained by the innuendo and colloquium of the complaint, and alleges their truth in justification.

It is not claimed that there was any variance between the complaint and the proof, except as to this one obscene word; and as both parties, by their pleadings, have thus treated this word as not actionable in itself, such pretended variance is immaterial, and must be held to have been waived. The law as to variance in actions for slander, and which has special application in this case, is, "that it is sufficient if the gravamen of the charge as laid, be proved." Townshend on Sland. and Lib., § 365, and cases cited in note 2.

If the defendant had designed to make the speaking of the words as laid a material issue, his denial should have been direct and unqualified; but he has seen fit to admit the speaking of words of the same import and criminal meaning, and justify their speaking by an allegation of their truth, and by charging the commission of the crime imputed both by the words charged and the words admitted to have been spoken. If the defendant did not speak the words as charged, that is the end of the case, and it is immaterial whether he used other words, or whether such other words were true or false.

After the defendant has denied the words charged, he will not be allowed to allege the speaking of other words imputing the same crime, and plead their justification. *Andrews v. Vanduzer*, 11 Johns., 38.

If the speaking of the words is to be justified at all, they must be justified as laid; and it is virtually a repetition of the slander, which will go to the aggravation of the damages upon failure of proof, the risk of which the defendant in all such cases incurs, and the advantages of which are secured by the plaintiff; and both of the parties to such issues are equally notified by the pleadings of the expected proofs. To place upon the records of the court, by answer, other slanders

than those charged in the complaint, and charges of crime in justification, would make a case entirely outside of the action brought, foreign and immaterial issues which could not be tried, and secure a permanent record of an unnecessary and gratuitous libel, and be an outrageous abuse of the defendant's privilege as a party to the action. Such a practice would be as reprehensible as it is new, and a construction which would give the answer in this case such a scope and meaning, should, if possible, be avoided.

It is evident that the county court construed the answer in justification as applicable to the words charged in the complaint, and as setting up matters which, if proved, might properly be considered by the jury, either in justification or mitigation; and the case seems to have been tried very fully, upon both sides, upon this very proper and reasonable theory; and indeed, the very language of the answer in matters of justification, in its most natural meaning, refers to the words charged in the complaint.

In view of this construction of the pleadings, there was not only no variance between the complaint and the proofs (and the county court very properly denied the motion of the defendant for a nonsuit on that ground), but the objection of the defendant to any evidence under the complaint was properly overruled, and the amendment of the complaint on the trial was properly allowed.

The point made that the act charged was not criminal by the laws of the state of Minnesota, where the words were spoken, or that it was incumbent upon the plaintiffs to prove that it was so criminal by the laws of that state, was not well taken; for, although the words were spoken in the state of Minnesota, they charged the act to have been committed in this state, in which by our law it is made a crime, as was proved by both parties on the trial. That words are slanderous *per se*, does not depend upon the laws of the state where they are spoken, but upon the laws of the state in which the

act is charged to have taken place.   *Van Ankin v. Westfall*, 14 Johns., 233.

The evidence of Goldhammer relating to the circumstances under which he had seen the plaintiff *Sophia* on other occasions, and to the appearances within a certain room, when no evidence had been given to prove that anything criminally improper had taken place on such occasions or in said room, was clearly immaterial, and properly excluded by the court.

The question put to Mrs. Best, and a similar one to Mrs. Winegar, "What has been her character and reputation, so far as you know, as a lady of morality, virtue and chastity?" was objected to because of the qualification, "so far as you know," without the witnesses being first asked whether they knew her general character and reputation, and answering that they did.

In any case, where the character of a party is properly in question, as in this case, it is sufficient to prove such character by witnesses who are well acquainted with the party in the neighborhood of his residence, without first asking them if they know the character of such party. In such a case, the question is not merely of reputation founded upon the speech of people, but of actual knowledge of the character of the party, and such knowledge is a proper subject of inquiry by any proper questions tending to that end. Townshend on Lib. and Sland., § 408; *Senter v. Carr*, 15 N. H., 351; *Douglass v. Tousey*, 2 Wend., 352. One of these witnesses had testified that she had known the plaintiff *Sophia*, where they had both resided, for eight, and the other one for nine, years. This was certainly sufficient to qualify them to speak of her character. The objection was properly overruled.

The question to the witness John Breskiller, tending to prove, and the general offer to prove by the witness, what another witness (Plunkett) said or did not say in a certain conversation with the plaintiff *John Dufresne*, after said witness *Dufresne* had testified to a statement made by Plunkett

in such conversation, contradictory to his evidence on the trial, were objectionable, as opening a collateral issue beyond the limit fixed by the rule in such case. We understand that rule to be, to first call the attention of the witness sought to be contradicted by his statements elsewhere, to such statements, and the time, place and occasion; then, if denied or ignored, to prove such statements by other witnesses; and finally, to allow the first witness to reäffirm or explain his evidence; and this is the end of the inquiry. 1 Greenl. on Ev., § 462.

That the original charge to the jury was not in writing when given, was an objection urged upon the motion for a new trial, and was overruled by the court; and the decision of the court of such a question, upon facts within judicial knowledge, when the fact that said charge was in writing is stated in the bill of exceptions, will not be reviewed by this court. The bill of exceptions becomes a record importing absolute verity in this court, until changed or amended in a proper way.

The exceptions to the charge of the court, as found in the bill of exceptions, and which are very numerous, are more critical and plausible than substantial.

The comments upon the evidence, although quite free and somewhat extended, do not appear to be unwarrantable or substantially unfair; and we think the court very clearly gave to the jury the correct rule of evidence in such a case, and in language not calculated to mislead or difficult to be understood, that the defense might be found upon the weight or preponderance of the evidence, and not beyond a reasonable doubt.

That part of the charge given, and the instructions refused, in relation to malice as affecting the question of damages, were immaterial, and could not have had, and most evidently did not have, any effect whatever; for the amount of the verdict repels the idea of any aggravated or exemplary damages having been allowed by the jury; and it does not appear that any of the alleged errors substantially affected the result.

*By the Court.* — The judgment of the county court is affirmed, with costs.

RYAN, C. J., dissents.

A motion for a rehearing was denied.