Bush, Redwood & Co. v. H. W. Foote et al.

1. Equitable Assignment. *How made. Part of a debt assignable.*
   A valid equitable assignment of a part of a debt may be made, regardless of
   the assent of the debtor; and anything which clearly manifests the intention
   of the creditor to make a specific appropriation of a particular thing to a
   particular purpose, and a willingness on the part of the transferee to accept
   such appropriation, may take effect as an equitable assignment.

2. Same. *Order on special fund. General bill of exchange. Liability of
   drawee.*
   An order drawn on a particular fund is operative as an assignment of the fund,
   or the portion thereof covered by the order, and will make the drawee equi-
   tably answerable to the payee for a failure to comply with its terms; but a
   bill of exchange or draft payable generally, and not specifying or referring
   to any particular fund, does not operate as an equitable assignment. And
   when the drawee refuses to accept such bill, or in any way to recognize any
   obligation as imposed on him by it, although indebted to the drawer in an
   amount greater than that drawn for, and afterwards pays to the drawer the
   amount of his indebtedness, the payee cannot hold him liable as upon an
   equitable assignment.

Appeal from the Chancery Court of Noxubee County.

Hon. F. A. Critz, Chancellor.

H. W. Foote employed F. T. Sanford to build three store-
houses, for the aggregate sum of about $8,000, to be paid on

the completion of the buildings. Bush, Redwood & Co. agreed to lend Sanford money to carry on the work of building the houses which he had undertaken to build for Foote, upon Sanford's agreement that they should be repaid out of the money which he expected to get from Foote on his building contract. Upon this agreement Sanford obtained money, from time to time, as his work progressed, until his indebtedness to them amounted to $2,940.42, when he gave to them an instrument of writing as follows: —

"$2.940.42           ،    Macon, Miss., July 7th, 1879.

"On the 1st day of August, 1879, pay to the order of Bush, Redwood & Co. twenty-nine hundred and forty and $\frac{42}{100}$ dollars, for value received, and charge to account of      F. T. Sanford.

"To Hon. H. W. Foote, Macon, Miss."

Bush, Redwood & Co. claim that Sanford intended this written demand as an assignment of $2,940.42 of the money to be due him from Foote on the building contract, and which he thought would become due at the time the demand was made payable, and that they accepted it as such assignment. It was presented to Foote, and he refused to accept, as the drawee thereof. Bush, Redwood & Co. allege that they requested Foote to notify them when he got ready to settle with Sanford, so that they might protect themselves, and that he by his conduct led them to believe that he would do so. But he denies that he did anything from which they might infer that he would give them such notice.

Some time after Foote's refusal to accept Sanford's demand in favor of Bush, Redwood & Co., Foote and Sanford had a settlement, and it was agreed that the former owed the latter $3,500, for which Foote gave Sanford his checks on Bush, Redwood & Co., who were bankers, with whom Foote had money on general deposit. The checks were presented to Bush, Redwood & Co., and they paid $559.58 thereon, but refused to pay the balance of $2,940.42, claiming that Sanford had assigned to them that part of the amount due him by Foote on the building contract.

Foote bought in his checks for $2,125, and then brought an action at law against Bush, Redwood & Co. upon his deposit account to recover the amount unpaid on the checks, $2,940.42. Thereupon they filed the bill in this cause against Foote and Sanford, and obtained an injunction thereon prohibiting Foote to proceed in his action at law against them. Foote answered the bill, and then moved to dissolve the injunction on bill and answer. His motion was sustained, and the complainants appealed.

*Jarnagin, Bogle & Jarnagin,* for the appellants.

1. The pleadings establish an equitable assignment of the fund due from Foote to Sanford on the building contract to the extent of $2,940.42, which is a valid, equitable offset to the suit at law, and shows a payment of the balance claimed by the suit at law. Foote's answer denies that the *deposit account* of himself with appellants was, or could have been, assigned by Sanford. We do not claim that it was, or was intended to be, assigned to appellants. We allege that the money due Sanford by Foote on the buildings was assigned, not the deposit account of Foote with these appellants. Sanford had no control over, or interest in this latter account, and, of course, could not assign it. He did own the account due him for erecting the buildings, and had a perfect right to transfer or assign it to any one. The courts have mainly differed on the question whether an order or draft for part of the sum due should be regarded as an assignment *pro tanto* as against the holder of the fund, without his assent. This question has been settled in favor of the assignment, by our Supreme Court. *Fitch* v. *Stamps,* 6 How. 487; *Moody* v. *Kyle,* 5 Geo. 506; *Hutchinson* v. *Simon,* 57 Miss. 628. There is no difference, under these decisions, in a court of equity, between an order or bill of exchange for the whole of a fund or sum of money in the hands of the holder and one for part of such fund or sum. In either case it is an assignment.

2. It is contended by the appellee that a bill of exchange,

payable generally, without specifying any special fund out of which it is to be paid, does not come within the rule, and is not an assignment, even in equity. Whether this be true or not, when there is but one fund in the hands of the holder, or there are circumstances showing an intent to charge a particular fund, the order or bill of exchange operates as an assignment, just as if it specified the fund on its face. Willard's Eq. Jur. (Platt's ed.) 464.

Viewing the case as made by the pleadings, the bill of exchange was an order on a special fund, and the case is controlled by *Hutchinson* v. *Simon*, 57 Miss. 628. The same doctrine is announced in the recent case of *First National Bank of Canton* v. *Dubuque Southern Railroad Company*, in the Supreme Court of Iowa, reported in North-Western Reporter (N. s.), vol. 3, No. 3, p. 395 ; also in American Law Review, February, 1880, p. 166. When the circumstances show an intention to assign, the bill of exchange will have that effect. *Bank of Commerce* v. *Bogy*, 44 Mo. 15 ; *Kimball* v. *Donald*, 20 Mo. 577. There is no difference, in this State, between an order or draft for the whole and for a part of a fund. *Hutchinson* v. *Simon*, 57 Miss. 628. A bill of exchange drawn for the whole of a fund or indebtedness is held by the best modern authorities to be an assignment of the fund, after notice to the drawee. 1 Dan. Neg. Inst. 12–21 ; Story's Eq. Jur., sects. 1041– 1044 ; *Gibson* v. *Cook*, 20 Pick. 15 ; *Robins* v. *Bacon*, 3 Greenl. 349 ; *Corser* v. *Craig*, 1 Wash. C. Ct. 424 ; *Wheatley* v. *Strobe*, 12 Cal. 97 ; *Roberts* v. *Austin*, 26 Iowa, 315.

3. Another well-established principle of equity sustains appellants' bill. When there is an agreement to pay advances out of a certain fund, and the advances are made on the faith of the agreement, the party advancing has an inchoate right to subject that fund by enforcing a specific performance. The simple agreement is not, perhaps, of itself, sufficient to constitute an assignment, or give the right to claim the fund, as against the holder, because the owner of the fund still has control over it, and a payment to him would be good. But

whenever the agreement is specifically performed by the owner appropriating the fund to the payment of the advances, the assignment is complete. No form of words is necessary to constitute this appropriation. Any act or writing on the part of the owner of the fund that will authorize the holder to pay the money directly to the assignee, without the further intervention of the owner, will be sufficient. Story's Eq. Jur., sects. 1045–1049; *Trist* v. *Child*, 21 Wall. 447; *Bank of Commerce* v. *Bogy*, 44 Mo. 15, and cases there cited; *Hoyt* v. *Story*, 3 Barb. 262. The bill of exchange having been given by Sanford in pursuance of the original agreement, upon the faith of which complainants advanced him money, was a sufficient appropriation of that fund, as it authorized Foote to pay directly to appellants without the further intervention of Sanford.

*W. H. Bogle*, of counsel for the appellants, argued the case orally.

*Orr & Sims*, for the appellee.

Did the drawing of the bill of exchange by Sanford, in favor of Bush, Redwood & Co., on H. W. Foote operate as an equitable assignment of the money which Foote owed Sanford for building, or did it confer any rights on Bush, Redwood & Co. against H. W. Foote? We hold that it did not. What was the paper which Sanford gave Redwood on Foote? It was not a bank check; it was not an order; it was a pure, simple bill of exchange. It was not drawn on any particular fund, nor was it drawn for the amount which Foote, the drawee, owed Sanford, the drawer, when they settled. At the time it was drawn, Foote owed Sanford nothing. Under the contract, he owed nothing till the buildings were finished, and that was more than six weeks after the bill was drawn. An ordinary draft or bill of exchange, unaccepted, and not made payable out of a particular fund, does not operate as an assignment or an appropriation of the funds of the drawer which may be in the hands of the drawee. 1 Abb. N. Y. Dig. 303, sects. 229, 230, 236.

There must be more than a mere agreement to pay out of a particular fund; there must be an *appropriation*, either by giving an order on it, or by transferring it in such manner as would have authorized Foote to have paid the whole of what he owed, without further intervention, objection, or interference by Sanford. 1 Abb. N. Y. Dig. 303, sect. 229.

" A bill of exchange does not operate as an equitable assignment of the money for which it was drawn, in the hands of the drawee." *Harrison* v. *Williamson*, 2 Edw. Ch. 430 ; *Phillips* v. *Stagg*, 2 Edw. Ch. 108. These were chancery cases.

Abbott states the proposition thus : "An ordinary draft or bill of exchange, unaccepted, and not made payable out of a particular fund, does not operate as an equitable assignment, and in all the cases where an order has been held to be an equitable assignment of a particular fund, *the fund has been specified in the order*," and cites the following cases, which will be found to support the proposition as stated by him : *Harris* v. *Clarke*, 3 N. Y. 93 (affirming *s. c.* 2 Barb. 94) ; *Cowperthwaite* v. *Sheffield*, 3 N. Y. 343 (affirming *s. c.* 2 Sandf. 416 — chancery case) ; *Winter* v. *Drury*, 5 N. Y. 525 (affirming *s. c.* 3 Sandf. 263 — chancery case) ; *Chapman* v. *White*, 6 N. Y. 412 ; 1 Ves. 280 ; 1 Russ. & M. 602, 605 ; 4 Sim. 607 ; 4 Myl. & Cr. 690 ; 3 Hare, 89 ; 18 Wend. 329 ; 2 Edw. Ch. 108 ; 3 Sandf. 257 ; *Dykers* v. *Bank*, 11 Paige, 617. This last case shows that Sanford had the right to countermand the payment of his bill, which he did.

There may be some *dicta* to the effect that a bill of exchange operates as an equitable assignment, but Judge Parsons says he found but one, and that ( *Corser* v. *Craig*, 1 Wash. C. Ct. 424, referred to by opposite counsel) may be considered as overruled. 1 Pars. on Notes & Bills, 331.

The case of *Wheatley* v. *Strobe*, 12 Cal. 97, differs materially from this. The bill of exchange was for the full amount of the debt. There were equities in favor of the payee not apparent here, and Strobe, the debtor, was interpleading with creditors who were contending for the fund. Strobe went

into court saying, "I owe the exact amount; here it is; let the court decide to whom I shall pay it."

The case of *Roberts* v. *Austin*, 26 Iowa, 315, did hold that a banker's check passed the money to the payees of the check. It is not necessary to point out the difference between a bill of exchange and a banker's check. But even in case of a banker's check there is no assignment, as is abundantly shown by the Supreme Court of the United States in *Bank of the Republic* v. *Millard*, 10 Wall. 155; *First National Bank* v. *Whitman*, 94 U. S. 343. The cases in the United States court have uniformly held that an ordinary bill of exchange does not operate as an equitable assignment, and in late cases they go so far as to say that a check springs no such privity between the payee and the bank as to justify a suit against the bank. *Manderith* v. *Welch*, Am. Law Rep. 647 (from 5 Wheat., near close of opinion); *Tiernan* v. *Jackson*, 5 Pet. 508, 601; *Bank of the Republic* v. *Millard*, 10 Wall. 152; *First National Bank* v. *Whitman*, 94 U. S. 343.

A solemn promise to pay out of a special fund will not operate as an assignment. *Chrimas* v. *Russell*, 14 Wall. 84. But a conclusive case, *Bank* v. *Bogy*, 44 Mo. 16, expressly decides that a bill is not an equitable assignment.

A claim which has never received the assent of the person against whom it is operated, and which remains to be settled by negotiation or suit at law, cannot be so assigned as to give the assignee an equitable right to prevent the original parties from compromising or adjusting the claim on any terms that may suit them. *Kendall* v. *United States*, 7 Wall. 113. After part of a debt has been assigned, without the consent of the debtor it is competent for the original parties to compromise. *Burnett* v. *Crandall*, 4 Cent. L. J. 212 (citing *Love* v. *Fairfield*, 13 Mo. 300, and the case of *Kendall* v. *United States*, 7 Wall. 113).

*J. A. Orr*, of counsel for the appellee, argued the case orally.

CAMPBELL, J., delivered the opinion of the court.

This court is committed to the doctrine that a valid equita-

ble assignment may be made of *part* of a debt, regardless of the assent or wishes of the debtor (*Hutchinson* v. *Simon*, 57 Miss. 628), and that anything which clearly manifests the intention of the creditor to make a specific appropriation of a particular thing to a particular purpose, and a willingness on the part of the transferee to accept such appropriation, may take effect as an equitable assignment. *Pass* v. *McRae*, 36 Miss. 143.

It is well settled that an order drawn on a particular fund is operative as an assignment of the fund, and will make the drawee equitably answerable to the payee for a failure to comply with the order; and it is equally well settled by the great weight of authority in England and America that "a bill or draft payable generally, and not specifying or referring to any particular fund, does not operate as an equitable assignment." 2 White & Tudor Ld. Cas., pt. 2, p. 1650, and cases cited in the comments on the leading case, *Ryall* v. *Rowles*.

The distinction is between an order and a bill of exchange. An order payable out of a designated fund is a specific appropriation of that fund, and vests in the payee a right to the particular thing thus appropriated, which will be made effective, as against the thing, by treating the person on whom the order is drawn as a holder of what is so specifically appropriated for him in whom it has been vested by the order.

A bill of exchange confers no such rights and has no such effect. It is payable generally, absolutely, and at all events. It does not appropriate any particular thing to the payee. The idea of a transfer or assignment to the payee of an interest in a particular fund does not obtain in reference to a bill of exchange. It has a distinctive character, and is attended by certain legal incidents. If accepted by the drawee, he is bound by virtue of his acceptance, and not upon the ground of an assignment of so much money in his hands belonging to the drawer. An order operates as an assignment without acceptance by the drawee. A bill of exchange does not operate as an assignment, even after it has been accepted.

We have carefully considered all the cases and text-books cited by counsel in this case, and many others, and among them all not one, as we think, maintains the case made by the bill of complainants. The case of Corser v. Craig, 1 Wash. C. Ct. 424, was not a contract between the payee and the drawee, and Judge Washington expressly said that no mischief could result from holding a bill of exchange to be a transfer of the money drawn for; because, if the drawee, after refusal to accept, should afterwards pay the money to the drawer, the payee not having notified him that he would hold him responsible for the money drawn for as having been assigned, the payment would discharge the drawee. So that, according to the opinion of the court in that case, the bill of exchange would operate as an assignment of the money in the hands of the drawee, or not, as the payee might give notice to the drawee that he considered it an assignment and would hold him responsible accordingly, or should fail to do this. In other words, whether a bill of exchange is an assignment, or not, depends on whether the payee so considers and claims. If this strange doctrine could be sanctioned, it would not maintain the case of complainants here; for, instead of claiming the bill of exchange as an assignment, and notifying the drawee that he would be held answerable for the sum of money drawn for as having been assigned to them, the complainants, when the drawee refused to accept the bill, instead of asserting any right, solicited from the drawee a promise to notify them when he went to make a settlement with the drawer of the bill, so that they might protect their rights as against him, and contented themselves with the silence of the drawee as to this request, and the inference they drew that he would comply with it; and a part of the complaint against the drawee is, that he did not notify complainants of the settlement he was about to make with the drawer, so that they might intercept the money in the hands of the drawee. This part of the bill is inconsistent with the alleged assignment; for if the bill of exchange was an assignment of its amount, the right of complainants as payees was secure against the drawee

having notice of it, and they had no need of notice of any settlement between the drawee and drawer, which could not. affect them injuriously.

The case of *Wheatley* v. *Strobe*, 12 Cal. 92, differs from the case at bar in the fact that the drawee had assented to the appropriation by verbally accepting the bill and promising to pay it.   It is true that the court held that he was not bound. by this acceptance, because a statute required it to be in writing, and the decision was based on the proposition that a. bill of exchange is an assignment of the money drawn for, as regards the drawee, even though he refuses to accept it ; but it is not probable that, in the face of a statute requiring ac-- ceptance to be in writing, the court would have held the drawee bound as though he had accepted in writing, but for his assent to the assignment.   The effect of the decision is. to make acceptance unnecessary in any case where the drawee is in funds, and to make a bill of exchange in itself an assign-- ment of its amount — a doctrine unsustained by authority and condemned by an imposing array of authorities.   It may be justly remarked that the cases cited in the opinion referred to,. except that in 1 Wash. C. Ct., were upon orders on desig- nated funds, and, therefore, do not sustain that opinion,. which wholly fails to advert to the obvious difference be- tween orders and bills of exchange, and thus confounds totally distinct things.   We cannot accept it as a correct ex-- position of the law.

After diligent search for a case in which the drawee who re- fused to accept the bill of exchange, or in any way to recog- nize any obligation as imposed on him by it, and who after- wards paid his indebtedness to the drawer or to his order, has been held liable to the payee of the bill, we have not found it,. and believe such a case does not exist.   We are not willing to make such a precedent.

The case made by the bill not being sufficient to maintain it, it is useless to consider the question of practice presented by the assignment of errors.

Decree affirmed.