# ROMERO

*v.*

# WILCOX.

San Juan, Equity, No. 996.

BILL TO SET ASIDE SETTLEMENT FOR FRAUD.

Attorney and Client—Contracts.

1. An attorney cannot be allowed to take advantage of the client, nor will the client be allowed to take advantage of the attorney.

Champerty—*In Pari Delicto.*

2. Where a client seeks to set aside a contract on the ground of champerty, and it appears that the result will be that a previous contract would be revived which itself has the same defect, the court will not interfere.

Champerty—New Adjustment of Account.

3. Where the evidence shows a charge was properly made it will not be disturbed. Where a bill is framed upon fraud and fraud was not proved, the prayer for further relief will not be extended to a relief predicated upon a different state of facts.

Equitable Assignment—Principles.

4. No particular form of assignment is necessary in equity. It may be of a particular fund, of a future interest, of future earnings, of part of a debt. The only requisite is the intention of the assignee to relinquish all control without regard to form.

Opinion filed December 31, 1918.

## STATEMENT OF FACTS.

The bill in this case was filed July 24, 1917, and alleges that

Romero v. Wilcox.

in September, 1912, plaintiff made an agreement with certain attorneys for the prosecution of a suit against Calaf et al. growing out of land transactions in Santo Domingo, upon an equal division of the proceeds (Romero v. Calaf, 9 Porto Rico Fed. Rep. 434), and Wilcox was substituted for one of these. That about June 1, 1914, at the instigation of Wilcox, plaintiff eliminated the remaining attorney, with the purpose of securing for Wilcox a greater percentage. This suit resulted in a judgment for plaintiff amounting to $21,080, later increased by interest. That upon intimation of an appeal in the above common-law suit, Wilcox on July, 1916, forced the plaintiff into a new contract for fees for further services, also to his own advantage. The judgment here below being confirmed January 6, 1917, Wilcox telegraphed for plaintiff, and, claiming that there would be a further appeal to the Supreme Court, on January 13 compelled plaintiff to go into a settlement, wherein Romero agreed that the sum of $13,370 was due Wilcox, and assigned a part interest in the judgment to secure the same. That the attorney previously dismissed brought suit three days later, and July 12, 1917, recovered a judgment for $2,500, besides costs, against Romero. That on July 14 said Wilcox filed with the clerk the said Romero settlement. Plaintiff prayed that the agreements and assignments of July, 1916, and January, 1917, be set aside, and for further relief. The papers complained of are made exhibits.

Defendant's answer was filed July 31, 1917, and denies all allegations of fraud, says the dismissal of the previous attornew was at the instance of Romero, and not of Wilcox, and that the 1916 change in the contract was necessitated by Wilcox having to advance money for plaintiff, and every important allega-

tion of the complaint except that there was an agreement is denied.

There was also intervention on behalf of alleged creditors of said Wilcox, which he did not oppose.

The case came on for trial August 16, 1918, and was submitted three days later upon briefs, which were not filed in time for decision at the last term.

*Messrs. Francis & Soto* for plaintiff.

*Mr. J. R. F. Savage* for defendant.

HAMILTON, Judge, delivered the following opinion:

1. The case at bar relates to a transaction between attorney and client in which the client alleges that he was overreached by the attorney, and asks that the transaction be set aside. The evidence convinces the court that in substitution of an arrangement previously made with other attorneys, the plaintiff, Romero, contracted with defendant, E. B. Wilcox, in July, 1916, for the prosecution of a certain suit in this court, whereby the lawyer and client were to share the recovery and expenses. On January 13, 1917, after the case had been won but an appeal was threatened, there was a settlement between them, providing for a different basis as to expenses, under which the attorney was to receive $13,370 absolute. To secure this the client assigned him one-half interest in the judgment recovered. It is this latter liquidation and assignment which is sought to be set aside, with the result that the prior contract of 1916 would prevail.

Romero v. Wilcox.

There is no doubt that contracts between persons in confidential relations are closely scanned. Holt v. Agnew, 67 Ala. 361. This applies to husband and wife, principal and agent, attorney and client, and all in trust relations; but there are cases in which strangers are protected against the principal. Noble v. Moses Bros. 74 Ala. 604. Transactions between attorney and client are not void, but are regarded with the closest scrutiny, even more than those between guardian and ward. Dickinson v. Bradford, 59 Ala. 581, 31 Am. Rep. 23; Ware v. Russell, 70 Ala. 174, 45 Am. Rep. 82. A gift from a client is absolutely void. Bispham, Eq. 296. After employment a variation of the contract is as a general rule invalid. Lecatt v. Sallee, 3 Port. (Ala.) 115, 29 Am. Dec. 249.

The relation of attorney and client is, therefore, an important and confidential one, and so far as it comes before a court will be controlled in the interest of justice. At the same time it cannot be held that the attorney, who is a sworn officer of the court, and supposedly dependent upon the honorarium he receives from the client, is to get no consideration from the court of which he is a member. The extent of the rule of scrutiny should ordinarily be to cast the burden of proving fairness on the attorney. Lecatt v. Sallee, supra. He is not to be allowed to take advantage of the client, but, on the other hand, the client is not allowed to take advantage of the attorney. Like other equities the principle is to be regarded as a shield, and not as a sword. If the attorney's efforts win the case, it is not equity for the court to disregard the contract between them governing the transaction, provided the contract is fair, and not against public policy. The question at bar is as to the second contract. The facts will be scanned closely, and in this case have been

Romero v. Wilcox.

scanned closely; but the court is not at all satisfied that there was anything unfair to plaintiff in the liquidation of January 13, 1917, now complained of. The evidence seems to show that it was brought about by the fact that the client felt himself unable to provide the different expenses needed in the prosecution of the suit, and it was to meet this situation and the prospect of appeal that led to the modification in question. The correspondence and papers in the case seem to show this, as well as the fact that the elimination of the other attorney, while resulting to the advantage of defendant, E. B. Wilcox, was prompted and carried out by the client himself.

2. Champerty and maintenance are prohibited by law as against public policy, and are even more offensive in equity. 4 Bl. Com. 97, note. The gist is the encouragement of litigation and stirring up strife. The Spanish Civil Code, § 1459, is based upon the same principle, and the Porto Rico Civil Code, § 1362, goes into greater detail. 10 Manresa, Comentarios, p. 110, § 1459. It has even been held that where the point has been acquiesced in during a suit for seven years, it could be raised after judgment by a stranger to the record. Jones v. Pettingill, 157 C. C. A. 461, 245 Fed. 269.

It may be doubted, however, whether the point arises in this case, inasmuch as the result of applying it would be that the plaintiff would secure the services of an attorney to win a suit and then take advantage of a technicality to obtain all the proceeds for himself. This will not be permitted in equity. Moreover, whatever claims of the kind the plaintiff had are waived by the form of his bill; for the defect, if it exists, is in the original contract of July, 1916, if not of 1912, which the bill in this suit seeks to enforce. The modification made by the liquidation

on January 13, 1917, amounts only to a modification of the details of a contract which in its essentials is not disputed by the plaintiff himself. If there is champerty or maintenance in the transaction set out in the bill, it exists equally in the prior contract which the plaintiff is seeking to enforce, and if it is to be considered ex moro motu by the court, as in Jones v. Pettingill, it would be the duty of a court of equity to enforce no part of it at all, and to leave the parties where it finds them, in pari delicto; that is to say, with the settlement of 1917 in force. It is not conceded, however, that the court should stop so short, inasmuch as the fund is in court and must be disposed of in some way by the court. It was properly recovered from the defendants in the law case and could not now be paid back to them. The parties to the equity case at bar all stand upon the original contract of 1916, in which the supposed defect inheres. It does not seem to be a case in which the court is called upon to apply the doctrine, all parties standing in the same condition.

3. It would seem, therefore, that the proof does not substantiate the bill as framed. The argument, however, is in the alternative, and asks that if the settlement be not set aside for fraud, at least two items in it be readjusted; to wit, $1,250 charged for attorney's fees and not so applied, and $2,643 paid to one Olmedo under a judgment of this court. As to the first, it should be said that the proof satisfied the court the charge was properly made; for while Pettingill claimed and obtained only $2,000 of the $3,250 mentioned, the remainder, that is to say, $1,250, is claimed by Ben A. Matthews, who is shown to have done work also on the appeal. Calaf v. Fernandez, 152 C. C. A. 581, 239 Fed. 795. It may be doubtful under the pleadings whether the proof made of this in another case between the same

parties can be used in the present suit; but at least the plaintiff has not proved the impropriety of the charge in this suit.

As to the item of $2,643 the case is different. This sum was paid Olmedo after litigation in this court, to which both the plaintiff herein and Wilcox were parties, and was based upon services rendered by Olmedo under the original contract between plaintiffs Olmedo and Wilcox. It may therefore be considered as res judicata between the parties to that contract that Olmedo was entitled to $2,500 and costs to recover it, and no reason appears why this should be charged up to the plaintiff herein alone. The contract under which the recovery was had was the one under which Wilcox was acting as well as Olmedo, and under which Wilcox was to recover equally with Olmedo. It does not appear equitable that Wilcox should carry on the litigation and succeed to the compensation, one half of which would otherwise have gone to Olmedo, without taking into account the fact that it has been determined Olmedo should recover in part.

The difficulty in this regard is not so much in the proof as the allegations of the bill. The bill is framed upon fraud, and fraud has not been proved. It is true the bill has a general prayer for relief and asks for "further relief," but this can hardly be extended to a relief predicated upon a different state of facts from that set out in the bill. It may be that the plaintiff is entitled to a correction of the account on the ground of mistake. The account was had three days before Olmedo's suit was filed, and there is nothing to show that Wilcox knew that the suit was about to be filed. There can be no recovery for money paid under a mistake of law, but the question whether Olmedo had rendered services sufficient to entitle him to a recovery was one of fact, as to which there might be a difference of opinion,

XI. Porto Rico.—10.

and was a difference of opinion until the verdict of the jury. Whether an amendment could have been made in this suit need not be determined, because an amendment was not applied for in this suit.

4. Different assignments by Wilcox to creditors have been filed in the suit, but it is difficult to pass upon them when the main object of the suit itself is determined adversely to the plaintiff. The most important one was for $9,620 dated January 14, 1917, and therefore the day after the liquidation above discussed. This was made to his brother E. W. Wilcox and was filed in this case March 21 of the same year. There are similarly claims of the Bayamon Fruit Company for $1,000, the Parkhurst Fruit Company for $2,000, and Matthews for $1200. It is set up in their behalf that whatever be the decision as between plaintiff and defendant, E. B. Wilcox, the interveners as bona fide purchasers for value should be protected. No particular form of assignment is necessary in equity, and in a proper case it need not even be written. Lowery v. Peterson, 75 Ala. 110. Equitable assignment must be of a particular fund, but may be in any form. National Exch. Bank v. McLoon, 73 Me. 511, 40 Am. Rep. 388; Brill v. Tuttle, 81 N. Y. 454, 37 Am. Rep. 515. In the case of a trust, notice to the trustee is not now regarded as necessary. Bispham, Eq. 106. Assignment of a future interest makes the assignor a trustee to convey when the interest arises. In England, contrary to the American practice, even a promise to assign is held to be equivalent to an assignment itself. Bispham, Eq. 221. In the case of assignment of a debt the creditor must give notice to the debtor in order to protect himself from subsequent assignees who give such notice. Bispham, Eq. 222. There may even be

an assignment of future earnings under an existing contract. Weed v. Jewett, 2 Met. 608, 37 Am. Dec. 115. An equitable assignment differs from a legal assignment in that, as all in interest may in equity be made parties, the assignment may be of part of a debt only. National Exch. Bank v. McLoon, 73 Me. 505, 510, 40 Am. Rep. 388; Bush v. Foote, 58 Miss. 5, 38 Am. Rep. 310. If the intention of the assignor to relinquish all control is shown, no particular form is necessary. Dickenson v. Phillips, 1 Barb. 454.

Under these principles it would seem that the interveners are at least subrogated in E. B. Wilcox's place, and in fact he does not contest the validity of the alleged assignments. The contract of 1917 between Romero and E. B. Wilcox, upon which the assignments were based, was outstanding and undisputed when these assignments were made. Notice to the debtor does not seem to be necessary, provided only the assignments are valid, which seems to be the case. The filing in court, while notice from its date, was not essential. There is no pleading as between the assignments themselves, and therefore no issues.

It follows, therefore, that the bill must be dismissed unless the plaintiff within ten days files such further pleadings as will entitle him to a reaccounting so as to take advantage of any error previously had in regard to judgment paid to Olmedo. No decree can be rendered upon the intervening claims inasmuch as they are dependent upon the result of the main case.

It is so ordered.